# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01223-RM-NYW

THOMAS R. ANTHONY,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, and
ANTHONY SANDOVAL,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiff Thomas R. Anthony's ("Plaintiff" or "Mr. Anthony") Motion to File Replacement Second Amended and Supplemented Complaint and Reconsider Order of Sept. 29, 2017 In Part ("Motion" or "Motion to Amend Second Amended Complaint") [#131], referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Memorandum dated June 21, 2018 [#132]. This court concludes that oral argument will not materially assist in the resolution of this matter. Having reviewed the Motion and associated briefing, the applicable case law, and the entire docket, I respectfully **RECOMMEND** that the court **DENY** the Motion to Amend Second Amended Complaint.

## BACKGROUND

The court has discussed, at length, the background of this case in prior Orders and Recommendations, *see, e.g.*, [#80; #93; #133], and does so here only as it pertains to the instant Motion. Plaintiff initiated this action by filing his *pro se* Complaint on May 23, 2016. [#1]. The

dispute between the Parties stems from the condemnation of a building Mr. Anthony owned located at 5001 National Western Drive (the "Property") in Denver, Colorado. [#23]. Plaintiff asserts various constitutional claims against various Defendants because of the events leading up to and including the condemnation of the Property. *See, e.g.*, [#1; #23; #108].

Presently, Plaintiff's Second Amended Complaint ("SAC") is the operative pleading. It names two Defendants—the City and County of Denver ("Denver") and Anthony Sandoval ("Mr. Sandoval") (collectively, "Defendants")—and asserts claims for violations of Plaintiff's Fifth and Fourteenth Amendment rights against both Defendants and for inverse condemnation against Denver. [#108]. Mr. Anthony, through counsel, filed the SAC on January 26, 2018—a date prior to the entry of the Scheduling Order on February 21, 2018, but which the Parties stipulated to as the deadline for amendment of pleadings and joinder of parties. *See* [#104; #112; #113]. Defendants then moved to dismiss the SAC on February 9, 2018. [#109]. After receiving an extension of time to respond to the pending motion to dismiss, and while the motion remained pending before this court, Mr. Anthony's counsel sought leave to withdraw from continued representation in this matter. [#123; #124; #127]. The court held a motion hearing on the motions to withdraw on May 9, 2018, which Mr. Anthony attended. [#130]. During that time, this court again advised Mr. Anthony that absent extraordinary circumstances there would be no extensions of deadlines set by the Scheduling Order. [*Id.* at 2]. The undersigned further stated that it intended to move forward with a Recommendation on the pending motion to dismiss, but that it would not prohibit Mr. Anthony from acting on his desire to seek leave to further amend the SAC. [*Id.*].

Plaintiff filed the instant Motion on June 20, 2018 [#131], and this court recommended granting Defendants' Motion to Dismiss the SAC on June 28, 2018 [#133]. Plaintiff then filed two additional motions seeking leave to amend the Scheduling Order. The undersigned denied

2

Plaintiff's Motion to Amend or Vacate the Scheduling Order [#135], but granted in part Plaintiff's Motion to Set Back Certain Discovery Deadlines and to Correct the Record [#153], extending discovery for the sole purpose of depositions and the dispositive motions deadline for an additional month. *See* [#157]. All other deadlines, including the deadline to amend pleadings, remained set. *See* [*id.* at 9].

In the instant Motion to Amend Second Amended Complaint, Mr. Anthony seeks leave to file a "Replacement Second Amended and Supplemented Complaint" ("RSASC") as well as "for reconsideration of parts of the court's order of Sept. 29, 2017 . . . which are in error." [#131 at 1–2]. Defendants oppose the requested relief. [#139]. The Motion to Amend Second Amended Complaint is now ripe for recommendation. The following discussion begins with an analysis of Mr. Anthony's arguments for reconsideration followed by an analysis of his arguments for leave to amend. In doing so, this court affords Mr. Anthony's filings a liberal construction but does not act as his advocate, and applies the same substantive and procedural law to Plaintiff as a represented party. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

I. **Motion for Reconsideration**

    A. **Legal Standard**

The Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration. Because Mr. Anthony seeks reconsideration of a non-final order, his Motion "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other

decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Courts in this district have applied different standards on motions for reconsideration of non-final orders. *See United Fire & Cas. Co.*, 2010 WL 420046, at *3 (listing cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard). But as a general principle, courts may grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is not an avenue for a party to reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding. *See id.*; *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

**B.     Application**

As far as this court can discern, Mr. Anthony's arguments for reconsideration intertwine with his arguments in support of further amendment. And while this court finds such arguments more suitable for its consideration of why Mr. Anthony seeks further amendment, *see, e.g.*, [#152 at 3 ("My request for reconsideration is in response to an invitation to replead" (emphasis omitted)], it will consider his arguments first under the law governing reconsideration for the sake of completeness. For the following reasons, I respectfully **RECOMMEND** that the court **DENY** Mr. Anthony's request for reconsideration.

*First*, Mr. Anthony argues for reconsideration of Judge Moore's Order finding as moot Plaintiff's claim that Denver condemned the Property for a private, as opposed to public, purpose. *See* [#131 at 5–6]. He contends that the Stipulation for Immediate Possession (the "Stipulation"),

4

found to concede a public purpose, "was a nullity" because Denver's attorney violated one of its provisions and, thus, Mr. Anthony "disavowed" the Stipulation. [*Id.* at 6; #152 at 4]. He also takes issue with the court's denial of his conversion of injunctive relief to monetary relief following his loss of ownership in the Property. [*Id.* at 7–8]. But Mr. Anthony's arguments largely reiterate his objections to the undersigned's initial Recommendation [#80], which Judge Moore specifically addressed in his Order [#93 at 15–17 (rejecting Mr. Anthony's objections to the denial of his Motion to Convert and that his public purpose challenge was moot)]. And, although Mr. Anthony argues that the Stipulation became a "nullity" unbeknownst to the court prior to Judge Moore's Order [#93], suggesting new evidence previously unavailable, it appears that Mr. Anthony unilaterally denounced the Stipulation following the Denver District Court's granting of a motion in limine that permitted the introduction of evidence regarding the alleged "meth lab" on the Property at the condemnation proceeding. *See* [#131 at 6; #131-1 at 25–28]. Accordingly, this court finds no reason to recommend reconsideration of Judge Moore's Order [#93] regarding Mr. Anthony's public-purpose challenge.

***Second***, Mr. Anthony avers that his challenges to the condemnation itself are now ripe for judicial review. *See* [#131 at 8–9]. He contends that the condemnation proceedings have concluded, and that he seeks to include new claims concerning Denver's conduct during the condemnation proceedings. *See* [*id.*; #152 at 4]. This argument is better suited for Mr. Anthony's request to further amend the SAC, as he presents no sufficient reasons for this court to recommend reconsideration of Judge Moore's Order [#93] finding Plaintiff's takings claim unripe. Indeed, as this court noted in its most recent Recommendation, Mr. Anthony appealed the condemnation award to the Colorado Court of Appeals and, thus, it appears that the condemnation proceedings remain ongoing. *See* [#133 at 10].

5

***Third***, Mr. Anthony argues it was reversible error to dismiss his First Amendment retaliation claim with prejudice. [#131 at 9–10]. He lodges two specific challenges in this regard, and I consider his second challenge first, as it pertains to the applicable legal standard. In this regard, he argues that the court applied the wrong legal standard to this claim because the case cited, *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007), applies only at summary judgment, not the pleading stage. [#131 at 9]. While Mr. Anthony is correct that *Van Deelen* dealt with a First Amendment retaliation claim at summary judgment, the legal principles that *Van Deelen* announced regarding such a claim are applicable at all stages. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (applying the same three elements of a First Amendment retaliation claim as applied in *Van Deelen* to a plaintiff's complaint when considering a Rule 12(b)(6) motion). Thus, Mr. Anthony fails to demonstrate clear error sufficient to warrant reconsideration on this point.

Plaintiff also asserts that this claim suffered from a mere pleading defect that further amendment would cure, such that dismissal with prejudice was clear error. [*Id.* at 9]. While dismissal under Rule 12(b)(6) is generally without prejudice to allow a plaintiff an opportunity to amend its allegations, dismissal with prejudice may be appropriate "when it is patently obvious" the plaintiff cannot prevail on the facts alleged and amendment would be futile. *Hall*, 935 F.3d at 1109–10. Plaintiff argues that his Corrected First Amended Complaint adequately alleged a First Amendment retaliation claim, but a motion for reconsideration is not an appropriate vehicle to rehash old arguments or facts already presented. Plaintiff also contends that his RSASC contains factual allegations sufficient to cure the deficiencies identified by Judge Moore's Order [#93]. *See* [#131 at 11–12; #131-1]. While this may be so, even if this court were to recommend reconsideration of Judge Moore's dismissal with prejudice of Plaintiff's First Amendment

6

retaliation claim, this does not equate to an automatic reinstatement as Plaintiff appears to suggest. Further, as discussed below, this court respectfully recommends denying Mr. Anthony's Motion to Amend Second Amended Complaint. Thus, this court finds no clear error in the dismissal with prejudice sufficient to recommend reconsideration on this point.

## II. Motion to Amend

### A. Legal Standard

As courts in this District have repeatedly observed, a "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *E.g.*, *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, LLC, 300 F.R.D. 678, 681 (D. Colo. 2014). Indeed, a Scheduling Order is an important tool used for the orderly preparation of a case for trial and to avoid surprise to the parties and to the court. *Id.* Accordingly, Rule 16(b)(4) of the Federal Rules of Civil Procedure expressly provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This court repeated the same admonition in the Scheduling Order entered in this matter. [#113 at 7].

The purpose of the deadline to amend pleadings and join parties, as set out in a Scheduling Order, is to force the parties to prioritize their discovery to obtain the information necessary to know if amendment is required sooner rather than later. This also ensures that discovery proceeds in an orderly fashion. *See Valles v. Gen-X Echo B, Inc.*, Civil Action No. 13-cv-00201-RM-KLM, 2013 WL 5832782, *3 (D. Colo. Sept. 27, 2013). While Plaintiff indicates that he seeks to supplement his Corrected First Amended Complaint [#23] and the SAC [#108], Rule 15(d) provides that supplementation is appropriate only when a "supplemental pleading set[s] out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). A review of the proposed RSASC reveals that all

additional allegations and claims arose *before* January 26, 2018—the date on which Mr. Anthony filed the SAC, the operative pleading in this matter—as the SAC superseded the Corrected First Amended Complaint. *See Smith v. Sprint/United Mgmt. Co.*, No. 15-cv-00550-WJM-KMT, 2015 WL 5444298, at *1 (D. Colo. Sept. 16, 2015) ("An amended complaint automatically supersedes the prior operative pleading, which is thereafter treated as nonexistent."). Thus, this court will treat the RSASC as a proposed Third Amended Complaint, rather than a supplement to either the Corrected First Amended Complaint or the SAC.

Accordingly, when a party seeks to amend pleadings after the deadline set in the Scheduling Order, the court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Only if the party establishes good cause does the court turn to whether amendment is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

**B.   Application**

As set forth below, this court concludes that Mr. Anthony fails to demonstrate good cause to amend the Scheduling Order under Rule 16. And while this finding can end this court's inquiry, for the sake of completeness, I also consider and conclude that Mr. Anthony fails to satisfy the more lenient standard of Rule 15 governing amendment of pleadings. Therefore, I respectfully **RECOMMEND** that the court **DENY** Mr. Anthony's Motion to Amend Second Amended Complaint.

*Rule 16(b)(4)*: The determination of good cause under Rule 16 lies within the sound discretion of the court. Fed. R. Civ. P. 16(b)(4). The inquiry under the Rule focuses on the

8

diligence of the party seeking leave to amend. A party establishes good cause when she demonstrates that she could not have met the deadline as set in the Scheduling Order despite her best efforts. *Pumpco*, 204 F.R.D. at 668. A party's delay in performing the pretrial preparation necessary to recognize a claim or defense does not satisfy Rule 16(b)(4)'s good cause standard. *See Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000).

In analyzing good cause this court focuses on Mr. Anthony's diligence in seeking leave to amend, not the prejudice to the opposing party. *Colo. Visionary Acad.*, 194 F.R.D. at 687. Throughout his Motion to Amend Second Amended Complaint and motions to amend the Scheduling Order [#135; #153], Mr. Anthony contends that good cause exists to amend the Scheduling Order because his counsel did not consult him about the claims asserted in the SAC or adhere to his desire to assert the 11 claims he now seeks to assert in the RSASC. *See* [#131 at 1–5; #135 at 1–2; #152 at 2]. Because he now proceeds *pro se*, Mr. Anthony contends that the interests of justice require an amendment to the Scheduling Order's deadlines so that he may pursue all of his claims against Defendants.[1] In addition to those reasons specified in this court's earlier Order on the Motions to Amend the Scheduling Order [#157], I conclude that Mr. Anthony fails to satisfy Rule 16(b)(4)'s good cause requirement.

It is well-settled that plaintiffs are free to choose their counsel and, in doing so, "cannot [] avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962). That is, "when the lawyer (or the client) makes a tactical

---

[1] Mr. Anthony also appears to take issue with the undersigned's admonition in its March 2, 2018 Minute Order [#118] that this court would permit no further extensions absent extraordinary circumstances. *See* [#152 at 6–7]. He argues that Rule 15 does not contemplate such a heightened requirement for amendment of pleadings, but the admonition had to do with further requests for an extension of time to respond to Defendants' Motion to Dismiss the SAC and therefore has no bearing on this court's good cause analysis under Rule 16(b)(4).

9

decision and his noncompliance with the court's directive is not the product of inadvertence" that decision binds the client. *See Smith v. United States*, 834 F.2d 166, 171 (10th Cir. 1987). Counsel first entered its appearance on behalf of Mr. Anthony on December 15, 2017 [#99]. On that same date Plaintiff's counsel expressed a desire to file the SAC, and, per stipulation of the Parties, this court set January 26, 2018 as the deadline for amendment of pleadings and joinder of parties. *See* [#104]. The Scheduling Order [#113] reflects this date, and Mr. Anthony filed his SAC on that date. *See* [#108]. Rule 16 makes clear that the deadlines set by the court in the Scheduling Order bind the parties, including Mr. Anthony even though he proceeds *pro se* once again. Fed. R. Civ. P. 16(b)(4). *See also Mann v. Fernandez*, 615 F. Supp. 2d 1277, 1288–89 (D.N.M. 2009) (holding the plaintiff bound by previous counsel's decision not to designate an expert witness, and finding no good cause under Rule 16(b)(4) to reopen discovery).

Additionally, whether counsel made a tactical decision to limit the SAC's claims or "fail[ed] to study the order—and the case" [#131 at 2], their action still binds Mr. Anthony. *See Smith*, 834 F.2d at 171. Indeed, when faced with similar circumstances, several courts have held that accusations of counsel's negligence or inadvertence, or even disagreement with counsel's strategic decisions after-the-fact, do not constitute good cause under Rule 16(b)(4). *See, e.g.*, *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (holding that carelessness or attorney error may constitute "excusable neglect" under Rule 6, but does not constitute good cause under Rule 16(b)(4); and concluding that previous counsel's failure to request extensions of scheduling deadlines was not good cause to now amend certain scheduling deadlines); *cf. Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 121 (W.D. Pa. 2010) ("Likewise, tactical errors and delays by experienced attorneys . . . do not demonstrate that Plaintiffs acted with diligence to this Court. . . . and, thus, [Plaintiffs] have failed to establish good cause . . . to permit the untimely

amendment"). This court finds *Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, 293 F.R.D. 688 (D.N.J. 2013) particularly illustrative and persuasive on this point. After retaining new counsel, the plaintiff sought leave to amend the scheduling order to conduct additional discovery and to file an amended claim construction brief. *Id.* at 691. The plaintiff's basis for amendment was its assertions that previous counsel did not allow it to participate in the litigation, did not discuss strategy, and did not consult it prior to filing briefs and documents, which hampered its ability to litigate the matter to its fullest extent. *See id.* at 697. In holding that the plaintiff failed to demonstrate good cause under Rule 16(b)(4), the court explained,

> Plaintiff's Motion appears to stem almost entirely from the withdrawal of previous counsel. *Ex post facto* disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause. The decision to retain Mr. Kaplan was Plaintiff's at the outset. It was similarly Plaintiff's obligation to monitor and approve Mr. Kaplan's proposed strategies and decisions throughout the course of this two and half year[-]old litigation. Here, Plaintiff ratified—whether by action or inaction—Mr. Kaplan's decisions through claim construction briefing and completion of discovery, as set by the Scheduling Order. It was not until two months after discovery had closed that Plaintiff filed the instant Motion.

*Id.* at 701.

A similar situation exists here. Mr. Anthony, whether through action or inaction, ratified his previous counsels' decision to file the SAC with only a limited the number of claims asserted, including to the exclusion of claims that the court did not dismiss. Further, Plaintiff (through counsel) agreed to the January 26, 2018 deadline for amendment of pleadings; he then waited nearly 5 months before seeking leave to amend his operative pleading once again; and he now offers only that good cause exists to amend the Scheduling Order because his counsel did not follow his directives regarding which claims the SAC should assert. *Cf. Morden v. XL Specialty Ins. Co.*, 315 F.R.D. 676, 681 (D.N.M. 2016) (holding that "a strategic decision, an erroneous assumption of law or fact, or mere oversight" did not establish good cause under Rule 16 to permit

11

the defendant to reassert a previously dismissed counterclaim out of time). And Mr. Anthony largely knew of the facts and circumstances giving rise to the claims he seeks to reassert before he initiated this action *and* before he filed the SAC when he had the opportunity to amend his original Complaint on multiple occasions. He thus fails to establish good cause under Rule 16(b)(4) to amend the Scheduling Order. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015) ("Because Appellants knew of the underlying conduct but simply failed to raise their claims, they cannot establish good cause under Rule 16." (internal brackets, citation, and quotation marks omitted)).

Because the court has found that no good cause exists for amending the Scheduling Order, it need not consider whether Mr. Anthony has satisfied Rule 15(a). *Gorsuch, Ltd., B.C.*, 771 F.3d at 1241. Nevertheless, because it proceeds pursuant to referral under 28 U.S.C. § 636, the court considers the issue below for the sake of completeness.

***Rule 15(a)(2)***: Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Ultimately, whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

At bottom, Mr. Anthony seeks leave to amend so that he can reassert those claims and Defendants that Judge Moore did not dismiss but which the SAC did not include, and to add new Defendants and claims relating to the condemnation trial. *See generally* [#131; #131-1; #152]. Mr. Anthony argues that amendment is necessary, and that the reasserted and new claims are plausible. *See* [#131 at 2–14]. Defendants argue that the court should deny Mr. Anthony's Motion

because it is untimely, does not cure previous deficiencies identified by the court as Mr. Anthony previously knew of the requisite facts when filing the SAC, is prejudicial to Defendants, and is futile. *See generally* [#137]. I respectfully agree that the court should deny amendment.

To start, in the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"), "untimeliness alone is an adequate reason to refuse leave to amend" when the movant fails to provide an adequate explanation for the delay. *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). In *Zisumbo v. Ogden Regional Medical Center*, the Tenth Circuit found no abuse of discretion under Rule 15 when the district court denied as untimely the plaintiff's motion to amend his complaint a second time filed "[n]early two years after [the] litigation began and more than four months after the scheduling order's deadline for amending pleadings[.]" 801 F.3d 1185, 1195 (10th Cir. 2015). The plaintiff argued that the reason for the delay was his counsel's "lack of knowledge" of the facts giving rise to his new claim for relief. *Id.* at 1196. The Tenth Circuit rejected this explanation, because such "belated realizations do not justify granting an untimely motion to add new claims" and the plaintiff conceded that he knew of the requisite facts at the time of filing his amended complaint. *Id.* Like *Zisumbo*, Mr. Anthony filed the instant Motion over two years after he initiated this matter and roughly 5 months after the deadline for amendment of pleadings that the Parties stipulated to, and his main reason for the delay is his disagreement with his previous counsels' limiting of his claims in the SAC. Further, as noted, Mr. Anthony (and his previous counsel) where aware of the facts giving rise to the claims in the RSASC *prior* to filing the SAC and, in some instances, from the outset of this matter. Accordingly, Mr. Anthony fails to provide an adequate explanation for his delay in seeking further amendment of the SAC. *See Zisumbo*, 801 F.3d at 1196; *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (explaining that courts "have denied leave to

amend in situations where the moving party cannot demonstrate excusable neglect," such as when the moving party was aware of the pertinent facts "some time prior" to filing a motion to amend).

Next, as to prejudice, courts may deny leave to amend when amendment would prejudice the nonmovant, such as when amendment "unfairly affects the defendants in terms of preparing their defense to the amendment" or where new claims arise out of a different subject matter than that alleged in the operative pleading. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). Here the RSASC's proposed claims concern the same nucleus of facts as those asserted in the original Complaint and SAC, and Mr. Anthony has asserted most of these claims in some iteration or another. Largely, Defendants contend that permitting further amendment will require them to expend considerably more resources, as this case will essentially start anew and immunity issues as to the newly included Defendants could further complicate discovery. *See* [#139 at 5–6]. But "expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009). If standing alone, this court might find that prejudice in this regard is insufficient to deny amendment. But coupled with the other issues, the prejudice is to both Defendants and this court as any new amendment will likely result in yet another round (and months) of dispositive motions. As discussed above, this case has been pending for over two years, the court has permitted Plaintiff to amend multiple times, and the court has extended pretrial and discovery deadlines multiple times. At some point, the claims in any action must be set so that the court may proceed to adjudicating the issues.[2]

Finally, concerning futility, Defendants argue that the RSASC seeks to reassert previously dismissed claims that remain subject to dismiss on a renewed motion to dismiss, are "subject to

---

[2] While this court recognizes that Mr. Anthony may have a dispute with his former counsel regarding how they represented him in this action, this lawsuit is not the proper avenue for adjudicating that dispute.

the various abstention and preclusions doctrines identified in the City's prior pleadings," and are subject to dismissal on absolute and qualified immunity grounds. *See* [#139 at 7–8]. Without deciding whether the RSASC's claims are subject to abstention and/or preclusion doctrines or whether some individuals enjoy absolute and/or qualified immunity, this court notes that several claims do appear futile. For instance, Mr. Anthony seeks to reassert several claims that Judge Moore previously dismissed—in some instances with prejudice. *See Wiggins v. Hoisington*, No. CV 11-967 KG/KK, 2015 WL 13665425, at *3 (D.N.M. Jan. 21, 2015) (concluding it was futile to allow the plaintiff to amend his complaint to reassert claims previously dismissed). Further, Mr. Anthony asserts that his Takings Claims are now ripe because the Stipulation was a "nullity", the condemnation trial concluded, and his new claims concern due process violations arising from Defendants' conduct at the condemnation trial. But it appears that only Mr. Anthony considers the Stipulation a "nullity" based on his disagreement with the Denver District Court's order on Defendants' motion in limine in that proceeding. In addition, the state condemnation proceedings remain ongoing, as Mr. Anthony has since appealed the condemnation award. *See Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991) (holding the plaintiffs' takings claim unripe when they had a pending condemnation action in state court, "[b]ecause the plaintiffs have not yet been turned away empty-handed"). Lastly, to the extent his due process claim alleges an adverse impact on the amount of the condemnation award, *see, e.g.*, [#131-1 at 28], the Tenth Circuit has held that such a claim is not ripe when state condemnation proceedings remain ongoing. *See B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1305 (10th Cir. 2008) (dismissing as unripe a due process claim alleging the defendant "acted in concert with the state trial judge to deprive [the plaintiff] of due process" during the state condemnation proceedings, because the claim

stemmed from the "ongoing state condemnation proceeding."). Thus, much of what Mr. Anthony seeks to assert appears futile.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1) The court **DENY** the Motion to Amend Second Amended Complaint [#131].[3]

DATED: September 4, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).